T.C. Summary Opinion 2004-148

UNITED STATES TAX COURT

MARVIN B. HUBBARD, Petitioner $\underline{v}$.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 2652-03S.                    Filed October 26, 2004.

Marvin B. Hubbard, pro se.

Laura A. McKenna, for respondent.

COUVILLION, Special Trial Judge: This case was heard pursuant to section 7463.[1]  The decision to be entered is not reviewable by any other court, and this opinion should not be cited as authority.

---

[1]    Unless otherwise indicated, subsequent section references are to the Internal Revenue Code in effect for the years at issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

Respondent determined deficiencies of $12,055 and $3,329 in petitioner's Federal income taxes for the years 2000 and 2001, respectively, and accuracy-related penalties under section 6662(a) for both years.

After concessions by respondent,[2] the issues for decision are: (1) Whether petitioner is entitled to head of household filing status under section 2(b) for the year 2000; (2) whether petitioner is entitled to claim a child care credit under section 21 for the year 2000; (3) whether petitioner is entitled to itemized deductions of $6,766 and $8,100 for home mortgage interest under section 163 for the years 2000 and 2001, respectively; (4) whether petitioner is entitled to itemized deductions of $10,307 and $16,680 for charitable contributions under section 170 for the years 2000 and 2001, respectively; (5) whether petitioner is entitled to a trade or business expense deduction of $10,000 under section 162(a) as a bad debt for the year 2000; and (6) whether petitioner is entitled to a trade or

---

[2] At trial, respondent conceded the following determinations in the notice of deficiency: (1) The accuracy-related penalties under sec. 6662(a) for the 2 years at issue; (2) disallowed Schedule C, Profit or Loss From Business, travel expenses deduction of $2,000 for the year 2001; (3) disallowed Schedule C wages deduction of $6,500 for the year 2000; (4) disallowed Schedule C "other expenses" deduction of $579.44 of the $3,500 claimed for the year 2000; and (5) the disallowed child tax credits under sec. 24 for the years 2000 and 2001.

business expense deduction of $2,920.56 under section 162(a) as other expenses for the year 2000.[3]

Some of the facts were stipulated. Those facts, with the exhibits annexed thereto, are so found and made part hereof. Petitioner's legal residence at the time the petition was filed was Memphis, Tennessee.

At the time of trial, petitioner was employed by the city of Memphis as a firefighter. In addition, petitioner was also employed by the Memphis Housing Authority during the years 2000 and 2001. In his position with the Housing Authority, petitioner patrolled apartments and carried a gun but was unable to make arrests. If a problem occurred, petitioner merely detained the individual or individuals in question and notified the police.

During the year 2000, petitioner's niece, Tymiesha Somerville, moved into his household. She arrived in February after being abandoned by her mother. Although Tymiesha's grandmother occasionally brought her gifts, petitioner was

---

[3] Generally, the burden of proof is on the taxpayer. Rule 142(a)(1). The burden of proving facts relevant to the deficiency may shift to the Commissioner under sec. 7491(a) if the taxpayer establishes compliance with the requirements of sec. 7491(a)(2)(A) and (B) by substantiating items, maintaining required records, and fully cooperating with the Secretary's reasonable requests. Prior to trial, petitioner did not cooperate with respondent in producing books and records to substantiate his expenses. All of the concessions by respondent were based on documentation produced by petitioner at trial. The burden of proof, therefore, did not shift to respondent under sec. 7491(a).

Tymiesha's sole source of support. During the time Tymiesha lived with petitioner, she attended daycare daily while petitioner was employed. On his Federal income tax return for the year 2000, petitioner claimed a dependency exemption deduction for Tymiesha as well as the credit under section 21 for expenses related to dependent care services and the child tax credit under section 24. Tymiesha did not live with petitioner during 2001, and petitioner claimed no credits or a dependency exemption deduction for her on his 2001 Federal income tax return. In the notice of deficiency, respondent disallowed petitioner's dependency exemption deduction for Tymiesha as well as the section 21 and 24 credits. Respondent conceded the section 24 child tax credit at trial.

In addition to his employment with the city of Memphis and the Housing Authority during the years at issue, petitioner was engaged in a security business that provided bodyguards for various entertainers such as the rapper DMX and singer Missy Elliott. During the year 2000, petitioner traveled to Africa with DMX as a security guard. Confusion developed in Africa when the authorities discovered that petitioner and his traveling entourage had neglected to obtain visas allowing them to stay in the country. They were not allowed to remain in the country. Petitioner contends he paid $10,000 in order for his group to leave the country. On his Federal income tax return for 2000,

petitioner claimed on Schedule C, Profit or Loss From Business, under expenses a bad debt deduction of $10,000 for the incident. That deduction was disallowed by respondent in the notice of deficiency. Petitioner also deducted Schedule C "other expenses" of $3,500, which he identified as $1,500 for business meetings and $2,000 for a cellular telephone. Both items were disallowed in the notice of deficiency; however, at trial respondent conceded $579.44 of the phone expenses, leaving $2,920.56 at issue. The deductions were disallowed for lack of substantiation.

Finally, in the notice of deficiency, respondent disallowed Schedule A, Itemized Deductions, amounts claimed by petitioner on his 2000 and 2001 income tax returns for charitable contributions of $10,307 and $16,680, respectively. Additionally, petitioner claimed itemized deductions for home mortgage interest of $6,766 and $8,100, respectively, for 2000 and 2001. These deductions were also disallowed for lack of substantiation.

With respect to the first issue, the claimed head of household filing status for the year 2000, section 2(b) defines a head of household as an individual taxpayer who (1) is not married at the close of the taxable year and (2) maintains as his home a household which constitutes the principal place of abode for more than one-half of the taxable year of a person who is a dependent of the taxpayer, if the taxpayer is entitled to a

deduction for the person under section 151.  Sec. 2(b)(1)(A)(ii).

As noted earlier, respondent conceded petitioner's entitlement to

the child tax credit under section 24.  That concession satisfied

the second prong listed in section 2(b)(1)(A)(ii), that the child

was petitioner's dependent, for whom he was entitled to a

deduction under section 151, and she was domiciled with

petitioner for at least 6 months of the taxable year.[4]  The only

remaining requisite for head of household filing status is

section 2(b)(1), which requires that the household provider be

"not married" at the close of the taxable year.  Although

petitioner was married and not divorced at the close of the tax

year in question, under section 7703(b)(3), a taxpayer who

maintains as his home a household which constitutes the principal

place of abode for more than one-half the year a child for whom

he is entitled to a deduction under section 151 is deemed to be

"not married" if, during the last 6 months of the year at issue,

his spouse did not reside with him.  Sec. 2(c).  Petitioner

---

[4]     On his 2000 Federal income tax return, petitioner
claimed Tymiesha Somerville as a dependent.  In the notice of
deficiency respondent disallowed the dependency exemption of
$2,800.  Neither party addressed this adjustment at trial;
however, respondent conceded petitioner's entitlement to the sec.
24 child tax credit for which Tymiesha was the qualifying child.
Since sec. 24 provides that a qualifying child means any
individual who, among other requirements not pertinent here, is a
dependent under sec. 151, respondent's concession of the sec. 24
credit also constitutes a concession that Tymiesha was a
dependent under sec. 151.  Therefore, in addition to the other
concessions in supra note 2, petitioner is entitled to the
dependency exemption deduction for the year 2000.  Sec.
24(c)(1)(A).

entered into evidence at trial a letter written by his mother that stated petitioner and his wife, Myrtis, were separated during the years 2000 and 2001 and concluded that petitioner and Myrtis had "an on and off relationship." The letter was vague as to the date petitioner and his wife separated and whether she lived with him the last 6 months of 2000; however, petitioner testified his wife left soon after his niece, Tymiesha, came to live with him and that his wife lived elsewhere thereafter. The Court accepts that evidence and finds that petitioner was not married at the close of the year 2000. Therefore, petitioner qualifies for head of household filing status for the year 2000.

Petitioner also claimed a child care expense credit under section 21 on his 2000 tax return with respect to Tymiesha, who resided with him for 9 months during the taxable year. A taxpayer who maintains a household that includes as a member one or more qualifying individuals[5] may claim as a credit against the tax a percentage of the child care expenses paid during the taxable year. The taxpayer must have incurred the child care expenses to enable him to be gainfully employed in that taxable

---

[5] A "qualifying individual" under sec. 21(b)(1) includes a dependent of the taxpayer, under age 13, for whom the taxpayer may claim a dependency deduction under sec. 151(c). As discussed previously, respondent, through the sec. 24 child tax credit concession, has accepted Tymiesha as a qualifying individual within the meaning of sec. 151.

year.[6]  Respondent did not challenge petitioner's classification of his niece as a qualifying individual under section 21(b)(1), or whether petitioner's payments for child care, if actually paid, were employment-related under section 21(b)(2).  Respondent disallowed petitioner's claim solely for failure to substantiate.

Petitioner claimed the expenses were paid to the service provider "Prestigious" and attached the required Form 2441, Child and Dependent Care Expenses, providing identifying information with respect to it on his 2000 tax return pursuant to section 21(e)(9).  In addition, petitioner testified credibly about the expense.  Section 1.44A-1(e), Income Tax Regs., allows the taxpayer to substantiate the child tax credit with "other sufficient evidence".  In the absence of adequate written substantiation, this Court may, if convinced by the evidence, estimate the amount of deductible expenses incurred.  <u>Cohan v. Commissioner</u>, 39 F.2d. 540 (2d Cir. 1930).  The Court is satisfied from the record that petitioner did incur child care expenses with respect to his niece, Tymiesha, that enabled him to pursue gainful employment.  On this record, the Court holds that petitioner is entitled to the child care credit of $480 on his 2000 income tax return under section 21.

---

[6]  Sec. 21(e) also requires that the taxpayer file either a joint return, if married, or as a head of household to qualify for the credit.  The Court has found that petitioner qualified for head of household status in year 2000; therefore, further discussion as to this requirement is unnecessary.

With respect to the third issue, petitioner claimed itemized deductions of $6,766 and $8,100 for home mortgage interest under section 163 for the years 2000 and 2001, respectively. Section 163(h) allows a deduction for interest paid on a qualified residence. Sec. 163(h)(2)(D). "Qualified residence" within the meaning of section 163 may be either the taxpayer's principal residence or another residence selected by the taxpayer and used as a residence. Sec. 163(h)(4)(A)(i). Although the petitioner listed the name of the company to which he paid interest for the home mortgage interest on his returns, he presented no substantiation or proof of his interest payments at trial, nor did he produce either a deed to any property or even a canceled check to or receipt from any bank or mortgage company. Therefore, respondent is sustained on this issue and the deductions are disallowed for 2000 and 2001.

With respect to the fourth issue, petitioner claimed $10,307 and $16,680 as itemized deductions for charitable contributions for the years 2000 and 2001, respectively. Each deduction was disallowed in its entirety in the notice of deficiency. A taxpayer may deduct any charitable contribution made within the taxable year. Sec. 170(a)(1). The deduction, however, is subject to verification pursuant to applicable regulations. Where a taxpayer donates an amount in excess of $250, it is necessary to substantiate the amount contributed with a

contemporaneous written acknowledgment from the donee.  Sec.
1.170A-13(f)(1), Income Tax Regs.  This written acknowledgment
must state the amount of cash or description of property the
taxpayer donated and a statement confirming that no consideration
was given to the taxpayer.  Sec. 1.170A-13(f)(2), Income Tax
Regs.

With respect to the $10,307 claimed for 2000, petitioner
listed on the return $6,239 as gifts by cash or check, $3,200 as
gifts other than by cash or check, and $870 as a carryover from
the prior year.  Petitioner offered into evidence a letter from
his church, St. John Baptist, acknowledging contributions of
$6,239 for the year 2000.  The letter also confirmed that no
goods or services were given to petitioner in exchange for the
contributions.  As to the gifts other than by cash or check,
petitioner offered into evidence a receipt from "AMVETS"
acknowledging receipt of several items of property.[7]  Petitioner
testified that the representative of the donee, AMVETS, who
received the donation listed the value of the property on the
receipt; however, petitioner did not know the basis upon which
the representative arrived at the value recorded on the receipt.
Although petitioner claimed that much of the property was

---

[7]     The receipt listed the following:  Five boxes and five
bags of clothing, furniture valued at $2,325, four chairs valued
at $275, three tables valued at $825, and one mattress valued at
$250.

"practically new", he offered no purchase invoices, documentation, or appraisals on the property to corroborate his contention.

In the absence of adequate written substantiation, this Court may, if convinced by the evidence, estimate the amount of deductible expenses incurred. <u>Cohan v. Commissioner</u>, <u>supra</u>. The Court is satisfied from the record that petitioner did in fact make various donations to AMVETS but concludes that the items were grossly overvalued. Therefore, the Court allows petitioner a deduction of $750 as a charitable contribution for his donations to AMVETS.

With regard to the church contributions of $6,239, petitioner presented a letter from his church attesting to contributions for that amount. While the Court is satisfied that petitioner made contributions to his church, the statement does not list the date or dates of contributions or the manner in which the payments were made, such as in cash or by check. Petitioner presented no receipts or canceled checks that would corroborate the statement of the church. The Court is not satisfied that petitioner's contributions to his church amounted to $6,239 during the 2000 tax year. This amount constituted 22 percent of petitioner's adjusted gross income for the year and amounts to $120 per week. The record does not satisfy the Court that petitioner established payments of that amount for the year.

Accordingly, pursuant to <u>Cohan v. Commissioner</u>, <u>supra</u>, the Court allows petitioner $750 as church contributions for 2000.

With respect to the $870 carryover from prior years, petitioner offered no evidence to establish the carryover. That item, therefore, is disallowed. Likewise, regarding the $16,680 deducted on his 2001 tax return, petitioner offered neither testimony nor documentation to substantiate the amount claimed.[8] Therefore, the Court sustains respondent on this issue and disallows the deduction in its entirety.

The fifth issue is a bad debt deduction of $10,000 claimed by petitioner as a trade or business expense in connection with his personal security activity. As noted earlier, petitioner contends he incurred this expense when he was hired to provide security for a rapper, DMX, on a tour of Africa. Because the performer and petitioner's entourage did not have the appropriate documents to be in Africa, they were permitted to leave the country only after petitioner paid $10,000. Petitioner deducted this payment as a bad debt on his 2000 tax return. The Court disagrees that such a payment would constitute a bad debt within the meaning of section 166. To the extent, however, that the payment otherwise constituted an expense incurred in connection

---

[8] Petitioner alluded to the existence of a letter from his church pertaining to his gifts during 2001 when he testified as to his contributions for year 2000; however, he never offered the letter into evidence, nor did he address it further.

with his trade or business, petitioner presented no documentation or any other evidence to substantiate the payment in question. Respondent, therefore, is sustained on this issue.

Finally, the last issue for decision is whether petitioner is entitled to deduct certain miscellaneous Schedule C expenses in excess of amounts allowed by respondent. In the notice of deficiency, respondent disallowed $3,500 of Schedule C "other expenses" petitioner deducted in the year 2000. On his income tax return, petitioner claimed $1,500 for business meeting expenses and $2,000 for telephone expenses.[9]

Section 162 allows a taxpayer to deduct ordinary and necessary expenses that are paid or incurred during the taxable year in carrying on a trade or business. Sec. 162(a); Deputy v. du Pont, 308 U.S. 488, 495 (1940). Furthermore, expenses paid or incurred by a taxpayer to attend a business meeting may constitute an ordinary and necessary business expense depending on the facts and circumstances of each case. Sec. 1.162-2(d), Income Tax Regs. These expenses, however, are subject to certain substantiation requirements. Sec. 1.162-2(f), Income Tax Regs.

In order to substantiate an expense, the taxpayer must keep such records as will be sufficient to enable the Commissioner to correctly determine income tax liability. Furthermore, the

---

[9]     As noted earlier, see supra note 2, respondent conceded $579.44, leaving $2,920.56.

regulations state: "it is to the advantage of taxpayers who may be called upon to substantiate expense account information to maintain as adequate and detailed records of * * * business expenses as practical since the burden of proof is upon the taxpayer". Sec. 1.162-17(d)(2), Income Tax Regs. The regulations further suggest that the taxpayer keep a diary or contemporaneous record of expenditures. Petitioner did neither. Although he claimed $1,500 in expenses for business meetings, petitioner offered no testimony or written documentation substantiating these expenses. Therefore, the Court sustains respondent on this issue.

As to the deduction for telephone expenses, petitioner's testimony was vague with respect to his cellular phone bills and offered only minimal written documentation.[10] Cellular phones are classified as "listed property" and thus subject to strict substantiation requirements. Secs. 274(d)(4), 280F(d)(4)(A)(v). Therefore, in order to deduct use of a cellular phone as a business expense, the taxpayer must produce adequate records or other evidence showing (1) the amount of the expenses; (2) the time and place of the use; (3) the business purpose; and (4) the business relationship to the property. Petitioner failed to meet any of these requirements; therefore, the Court holds for

---

[10] Petitioner's production of a single cellular telephone bill resulted in respondent's conceding $579.44 of petitioner's miscellaneous Schedule C deduction.

respondent on this issue and disallows all but the conceded amount.

Reviewed and adopted as the report of the Small Tax Case Division.

<u>Decision will be entered</u>

<u>under Rule 155.</u>